IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>vs. )<br>)<br>MICHAEL LAIRD HYATT and )<br>PAMELA LYNN GANEY HYATT, )<br>)<br>**Defendants.** ) | CRIMINAL NO.  06-00260-WS |

**ORDER**

This matter is before the Court on the defendants' motion for judgment of acquittal or, in the alternative, motion for new trial.  (Doc. 79).  The motion also includes a motion for dismissal based on prosecutorial misconduct.  (*Id*. at 12-17).  The government has filed a response, (Doc. 84), and the motions are ripe for resolution.  After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motions are due to be denied.

**BACKGROUND**

The defendants, a husband and wife, proceeded to trial under a 19-count superseding indictment addressing their conduct in and related to six bankruptcy proceedings.  (Doc. 5).  The debtor in the first-filed proceeding was P&M Sand and Gravel, Inc., the owner of which was defendant Pamela Hyatt.  The debtors in the other five proceedings were the defendants.  The substantive counts charged concealment of property of the estate in violation of 18 U.S.C. § 152(1); making a false oath in violation of 18 U.S.C. § 152(2); making a false statement in violation of 18 U.S.C. § 152(3); making a false entry in violation of 18 U.S.C. § 1519; and money laundering in violation of 18 U.S.C. § 1956(a)(1).

The counts, and the jury's verdict as to each, is synopsized below.

| Count | Charge | Bankruptcy No. | Defendant | Verdict |
|---|---|---|---|---|
| One | Conspiracy | all six | Both | Guilty |
| Two | False statement | 01-16101 | Both | Guilty |
| Three | False statement | 01-16101 | Both | Guilty |
| Four | False statement | 01-16101 | Both | Guilty |
| Five | False statement | 01-16101 | Both | Guilty |
| Six | False statement | 01-16101 | Both | Guilty |
| Seven | False statement | 01-16101 | Both | Guilty |
| Eight | False statement | 01-16101 | Both | Not guilty |
| Nine | False statement | 03-12978 | Both | Guilty |
| Ten | False statement | 03-12978 | Both | Not guilty |
| Eleven | False statement | 03-15898 | Michael | Not guilty |
| Twelve | False statement | 04-10905 | Pamela | Not guilty |
| Thirteen | Fraudulent concealment | 01-16100 | Pamela | Not guilty |
| Fourteen | Fraudulent concealment | 03-12978 | Both | Not guilty |
| Fifteen | Fraudulent concealment | 03-15898 | Michael | Not guilty |
| Sixteen | False oath | 03-15898 | Michael | Guilty |
| Seventeen | False entry | 06-11305 | Pamela | Guilty |
| Eighteen | Money laundering | | Michael | Not guilty |
| Nineteen | Money laundering | | Michael | Not guilty |

**I.  Motion for Judgment of Acquittal.**

A motion for judgment of acquittal may be granted only if "the evidence is insufficient to sustain a conviction."  Fed. R. Crim. P. 29(a).  In making this determination, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Eckhardt*, 466 F.3d

938, 944 (11th Cir. 2006) (emphasis in original) (internal quotes omitted). Viewing the evidence in the light most favorable to the prosecution requires the Court to "resolve any conflicts in the evidence in favor of the government," *United States v. Ward*, 197 F.3d 1076, 1079 (11th Cir. 1999), and to "dra[w] all reasonable inferences and credibility choices in the Government's favor." *United States v. Browne*, 505 F.3d 1229, 1253 (11th Cir. 2007).

**A. Counts Two - Seven.**

Each of these convictions was based on the defendants' underreporting of income on a statement of financial affairs in Bankruptcy Action No. 01-16101. The falsity of the information on this form was shown by the defendants' federal income tax returns.

| Count | False Statement | On St. of Fin. Affairs[1] | On Tax Return[2] |
|---|---|---|---|
| Two | Pamela's 1999 income from P & M | $18,246.00 | $44,956.79 |
| Three | Pamela's 1999 income from MNA Specialty | $0 | $41,260.00 |
| Four | Michael's 1999 income from P & M | $25,975.00 | $73,362.83 |
| Five | Michael's 2000 income from P & M | $14,586.00 | $24,712.83 |
| Six | Pamela's 2000 income from P & M | $10,339.00 | $17,756.79 |
| Seven | Pamela's 2000 income | $0 | $17,600.00 |

---

[1] Government Exhibit 1.c.

[2] Government Exhibits 25, 27.

from MNA Specialty

The defendants argue that they could not have misstated their income knowingly and fraudulently, as required to sustain a conviction, because: (1) the bankruptcy petition was prepared by a lawyer; (2) there was testimony that the lawyer made errors by placing items on the wrong schedules and by not listing the IRS as a creditor; (3) the tax returns had not been prepared at the time the statement of financial affairs was filed; (4) they disclosed the correct information in their tax returns; and (5) Michael "exonerated" Pamela by testifying that he supplied the bankruptcy lawyer with the figures shown in the statement of financial affairs. (Doc. 79 at 7-8).

A lawyer did prepare the petition, but there was evidence that he did so based on information (including statements of income) provided by the defendants. The lawyer may have made errors in other aspects of the petition, but the jury was not required to conclude that the information as to the defendants' income was not the information the defendants provided him. The tax returns may not have been prepared when the petition was filed, but the defendants' W-2 forms, which showed the correct income figures, had been. The jury was not required to conclude that, since the defendants eventually disclosed their true income in their tax returns, they could not have acted knowingly and fraudulently at the time they filed their petition. The jury, for example, could have concluded that the defendants incorrectly believed their tax returns would never be compared against their bankruptcy filings, failed to consider the possibility, or proceeded in disregard of the risk. Nor was the jury required to accept Michael's testimony. Even if it accepted that Michael had supplied the income figures, Pamela herself personally vouched for their accuracy under penalty of perjury at a time her own W-2 forms showed the information to be false.

In short, the evidence was more than sufficient to show that the defendants knowingly and fraudulently misstated their income as charged in Counts Two through

Seven.

### B. Count Nine.

Count Nine charged not an under-reporting, but total non-reporting, of income from employment or a business in Bankruptcy Case No. 03-12978.  As with Counts Two through Seven, the defendants do not challenge the falsity of the statement of financial affairs, but they do argue there was insufficient evidence they acted knowingly and fraudulently, because the income the defendants did not disclose in Case 03-12978 had largely been reported through monthly reports filed in Case 01-16101 until it was dismissed earlier in 2003.  Thus, the defendants conclude, their failure to list any income in the later case "was clearly a mistake."  (Doc. 79 at 7-8).  The jury was not required to agree with this exculpatory spin.

Section 152(3) applies to "a false declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28."  The defendants argue they cannot be convicted of this crime because their signatures in Bankruptcy Case 03-12978 were made electronically, not by hand.  (Doc. 79 at 7 n.8, 21).  They do not deny that they signed the petition or that it was signed for them with their authorization.

Sections 152(3) and  1746 do not expressly require a signature by hand, and the defendants offer neither an explanation of their conclusory argument nor a single authority that has embraced it.  It appears that courts have routinely concluded that electronic signatures have the same effect as hand signatures unless court rules provide otherwise.  *See, e.g., Wingate v. Gage County School District No. 34*, 2007 WL 2904094 at *1 (D. Neb. 2007) (electronic signature satisfied Section 1746); *Jackson v. Ricks*, 2006 WL 2023570 at *9 n.10 (N.D.N.Y. 2006) (similar); *United States v. Charboneau*, 2005 WL 2346947 at *5 n.18 (M.D. Fla. 2005 ) (similar); *see also In re: Winters*, 2008 WL 202774 at *4 (Bankr. N.D. Ohio 2008) (electronic signatures under penalty of perjury subjected debtors to denial of discharge under 11 U.S.C. § 727(a)(4)); *In re: Castiglione*,

2007 WL 319494 at *1 (Bankr. D.N.J. 2007) (similar); *cf. Tdata Inc. v. Aircraft Technical Publishers*, 2007 WL 464411 at *3 (S.D. Ohio 2007) (under local rules, a declaration with an electronic signature could not be considered on motion for summary judgment).

In sum, the evidence was more than sufficient to show that the defendants knowingly and fraudulently misstated their income as charged in Count Nine, and no evidence of a hand signature was required.

### C.  Count Sixteen.

Michael was charged in Count Sixteen with knowingly and fraudulently making a false oath.  His sole argument is that the guilty verdict on this count is inconsistent with the not guilty verdict on Count Fifteen, and that this inconsistency establishes the insufficiency of the evidence under Count Sixteen.  (Doc. 79 at 8-9).

As the Court has noted previously, "'as long as the guilty verdict is supported by sufficient evidence, it must stand, even in the face of an inconsistent verdict on another count.'  *United States v. Mitchell*, 146 F.3d 1338, 1345 (11th Cir. 1998); *accord United States v. Schlaen*, 300 F.3d 1313, 1317 (11th Cir. 2002)."  (Doc. 78 at 2).  As a matter of law, any alleged inconsistency between the verdicts in Counts Fifteen and Sixteen cannot support a motion for judgment of acquittal.[3]

### D.  Count Seventeen.

Pamela was charged in Count Seventeen with knowingly making a false entry by

---

[3]There is no real inconsistency to begin with.  Count Fifteen was based on a general failure to disclose business interests during the pendency of Bankruptcy Case 03-15898, while Count Sixteen was based on a specific sworn denial of an interest in a particular business (Baldwin Aggregates) made orally on a particular date in a particular hearing.  While Count Fifteen could have been stretched to cover this oral, affirmative denial of interest, the prosecution presented that count as addressing various filings made in the bankruptcy case.

stating that she had no income other than from employment or operation of a business when she in fact had gambling income. She argues the evidence is insufficient to sustain the conviction because: (1) her lawyer and attorney acknowledged failing to pick up the gambling income as reported on her tax returns; (2) she filed an amended petition disclosing gambling income before the indictment was unsealed; and (3) the verdict is inconsistent with not guilty verdicts she obtained on other counts charging the defendants with making false statements about gambling income. (Doc. 79 at 9-11).

The jury was not required to absolve the defendant due to her counsel's performance, especially since she was aware of the contrary information in her own tax returns and submitted the petition under penalty of perjury. Her amended petition was consistent with an effort to escape prosecution, and it disclosed only a small fraction of the gambling income shown on tax forms prepared by the casinos. As noted in Part I.C, any inconsistency in verdicts furnishes no grounds for granting a motion for judgment of acquittal.[4]

### E. Conspiracy.

The defendants were charged in Count One with conspiring to knowingly and fraudulently conceal property belonging to the estate of the debtor in violation of 18 U.S.C. § 152(1). The indictment charged a number of overt acts implicating all six bankruptcy proceedings.

The defendants argue there was insufficient evidence of an overt act, but they admit that several of the overt acts resulted in convictions on substantive counts. (Doc. 79 at 5-6). Because, as discussed in Parts I.A-D, those convictions are supported by

---

[4] Again there is no real inconsistency, since the counts as to which the defendant was acquitted concerned different bankruptcy cases, were charged under a different statute, and (because her tax returns and amended petition confirmed the existence of net gambling income) were not subject to her argument that she suffered net gambling losses and therefore was not required to disclose her gross winnings.

sufficient evidence, there was likewise sufficient evidence of multiple overt acts.

The defendants also argue there was insufficient evidence of an agreement between them, (Doc. 79 at 5-6), but the close relation of the defendants, including without limitation their joint and cooperative operation of several businesses and their joint filing of bankruptcy petitions containing information plainly known by both of them to be false, amply supports the jury's finding. The defendants insist that the sheer number of filings, and the availability of tax records to demonstrate the falsity of statements within them, show they could not have harbored a criminal intent, (*id*. at 5), but that is an argument for the jury, which rejected it.

## II.  Motion for Dismissal.

Before the grand jury that delivered the original indictment, an Assistant United States Attorney made a comment that the defendants construe as providing an impermissible opinion as to their guilt. (Doc. 79 at 12-17).

"We hold that, as a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988). "Under this standard, dismissal of the indictment is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Id*. at 256 (internal quotes omitted). The only exceptions to this rule arise when "structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair," *id*. at 256-57, and the result in such cases is not that the requirement of prejudice is dispensed with but that a "presumption of prejudice" arises. *Id*. at 257.

The defendants were not tried under the indictment delivered by the grand jury that heard the challenged comment. Instead, the defendants were tried under the superseding

indictment, which was delivered by a different grand jury that did not hear the challenged comment. (Docs. 1, 5). There is thus no doubt that the decision to indict was free from the influence of the challenged comment. The comment did not constitute structural error, *see United States v. Exarhos*, 135 F.3d 723, 726-27 (11th Cir. 1998) (government's presentation of forged documents was not structural error), and even structural error raises only a presumption of prejudice, which is rebutted here because the grand jury which heard the challenged comment did not deliver the indictment under which the defendants were tried.

### III. Motion for New Trial.

A motion for new trial may be granted "if the interest of justice so requires." Fed. R. Crim. P. 33(a). The decision whether to grant or deny such a motion rests in the sound discretion of the trial court. *United States v. Champion*, 813 F.2d 1154, 1170 (11th Cir. 1987).

The defendants present five grounds in support of their motion: (1) the Court improperly commented on the evidence; (2) the Court improperly admitted a certified copy of Nicholas Hyatt's bankruptcy petition; (3) the government asked burden-shifting questions; (4) there was prosecutorial conflict of interest; and (5) Court rulings deprived the defendants of their theory of defense. (Doc. 79 at 18-22). The Court explores these arguments in turn.

#### A. Comment on the Evidence.

Question 2 on the statement of financial affairs requires a debtor to "[s]tate the amount of income received by the debtor other than from employment, trade, profession or operation of the debtor's business during the two years immediately preceding the commencement of [the bankruptcy] case." On its face, this question requires the disclosure all income of the debtor other than from an occupation. Not surprisingly,

bankruptcy courts have routinely construed the expansive language of Question 2 as requiring the disclosure of income from gambling and have punished debtors who failed to disclose such income. *See In re: Swensen*, 2008 WL 114907 at *21, *23 (Bankr. E.D. Cal. 2008); *In re: Keck*, 363 B.R. 193, 202 (Bankr. D. Kan. 2007); *In re: Senese*, 245 B.R. 565, 575 (N.D. Ill. 2000). At trial, multiple witnesses familiar with bankruptcy practice testified that Question 2 requires disclosure of gambling income, and no witness testified otherwise. Nor did the defendants or their counsel suggest that Question 2 excludes gambling income, much less suggest any rationale for such a patently incorrect assertion.

On the fourth day of trial, after this wealth of unchallenged evidence had been produced, defense counsel objected to a question on the grounds that it assumed that Question 2 extends to gambling income. The Court responded, in the presence of the jury, that "[t]here's no question in this case that that block includes gambling income. That's been testified to time and time again. It's other income. Objection overruled." The defendants argue that this comment compels a new trial for Pamela Hyatt on Count 17 (the only count concerning a failure to disclose gambling income on which a guilty verdict was returned). (Doc. 79 at 18-19).

Neither at trial nor on their present motion have the defendants been able to articulate any conceivable basis for concluding that Question 2 does not extend to gambling income. At trial, counsel conceded that she simply wanted the jury to decide the issue — presumably on the basis of jury nullification — and in closing she devoted precisely seven words to the issue.

"It is within [a trial judge's] province, whenever he thinks it necessary, to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence, by drawing their attention to the parts of it which he thinks important, and he may express his opinion upon the facts, provided he makes it clear to the jury that all matters of fact are submitted to their determination." *Quercia v. United States*, 289 U.S. 466, 469

(1933). "In commenting upon testimony he may not assume the role of a witness. He may analyze and dissect the evidence but he may not either distort it or add to it." *Id*. at 470. The Court's comment correctly stated that the testimony had uniformly been that Question 2 extends to gambling income and that no issue about its extent had been raised. The Court thereby drew attention to the evidence concerning the scope of Question 2, without distorting or adding to it, and expressed an opinion as to its scope. This fits comfortably within the range of comment authorized in *Quercia*.

The Court, at counsel's request, promptly instructed the jury to disregard its comment. Within two hours thereafter, the Court charged the jury that it and it alone was the finder of fact, that nothing the Court said should be construed as reflecting the Court's opinion on issues in the case, and that the jury in making its factual determinations should disregard anything the Court had said. This easily satisfied the *Quercia* requirement that it be made clear to the jury that all factual issues are for its determination.

In sum, there was no error, no harm from any error, and no grounds for new trial.

### B.  Nicholas Hyatt Bankruptcy Petition.

The defendants testified that their son Nicholas was the only person with an ownership or other interest in Baldwin Aggregates, such that they had no interest in the business to be disclosed in their various bankruptcy statements. The prosecution demonstrated that this testimony was contrary to the sworn statement of Michael Hyatt in a state proceeding that he (Michael) was the sole owner of Baldwin Aggregates. The prosecution also introduced, over objection, a certified copy of Nicholas Hyatt's June 2004 bankruptcy petition, in which he disclosed no interest in Baldwin Aggregates. The defendants argue that admission of this evidence requires a new trial as to Michael Hyatt's conviction under Count Sixteen because: (1) it violated his rights under the Confrontation Clause; and (2) it violated Federal Rule of Evidence 403. (Doc. 79 at 19).

The defendants raised no constitutional challenge at trial,[5] and their "argument" on motion for new trial is expressed as a one-line sentence that merely declares the unadorned conclusion of a Sixth Amendment violation.  The Court is under no obligation to develop the defendants' arguments on their behalf, and it declines to do so.

Moreover, the Confrontation Clause applies only to statements that are "testimonial," *Crawford v. Washington*, 541 U.S. 36, 68-69 (2004), and the Court has discovered no Supreme Court or Eleventh Circuit case establishing, directly or by necessary implication, that a bankruptcy petition's silence as to ownership of a business is testimonial for Sixth Amendment purposes when used to oppose a defendant's exculpatory testimony that the debtor owned the business.  Finally, it is apparent that the petition did not affect the verdict, because the government relied on the defendant's own sworn statement that he was the sole owner of Baldwin Aggregates, which fully inculpated him independently of the petition.[6]  Any constitutional error was thus

---

[5]Instead, they argued relevance and prejudice, along with a vague complaint that the document should have been introduced through Nicholas.  These grounds do not implicate the Confrontation Clause.  *See United States v. Vasquez*, 225 Fed. Appx. 831, 834-35 (11th Cir. 2007) (a complaint that the declarant has not been called, without mentioning the Confrontation Clause, does not preserve a constitutional challenge); *United States v. Chau*, 426 F.3d 1318, 1321-22 (11th Cir. 2005) (an objection that does not mention the Confrontation Clause but only hearsay does not preserve the constitutional objection).

[6]The defendant's in-court explanation that he lied in the state proceedings in order to keep Nicholas out of trouble with state authorities could not mitigate the statement's damning impact: even were the jury to believe the defendant's in-court testimony, it could only conclude that he was demonstrably willing to purposefully lie under oath in order to suit his interests, including with respect to his ownership of various businesses.

The defendants suggest that Michael Hyatt's acquittal on Count Fifteen is inconsistent with his conviction on Count Sixteen, and that this inconsistency demonstrates that Nicholas's bankruptcy petition affected the result at trial.  (Doc. 79 at 19).  As discussed in note 3, *supra*, there is no real inconsistency in the verdicts.  Even if there were, the defendants have identified no scenario under which the petition could have generated a guilty verdict on Count Sixteen without having a similar effect on Count

harmless. *See United States v. Henry*, 226 Fed. Appx. 963, 965 (11th Cir. 2007) (properly preserved Confrontation Clause objection is subject to harmless error analysis).[7]

The defendants' Rule 403 objection is no better explained than their constitutional one. (Doc. 79 at 19). At trial, defense counsel argued only that introduction of the document was prejudicial *to Nicholas*. Certainly the petition's silence as to Baldwin Aggregates was relevant to whether the defendants testified truthfully that Nicholas owned the business, no danger of unfair prejudice to the defendants has been identified or is apparent, and any such danger does not substantially outweigh the probative value of the exhibit.

In sum, there was no error, no harm from any error, and no grounds for new trial.

### C. Burden-Shifting Questions.

Pamela Hyatt testified on direct examination that her gambling losses exceeded her gambling winnings every year, and she offered this as a reason why the petitions she filed never listed any income from gambling. On cross-examination, the prosecutor asked her to identify any document that would reflect any of her gambling losses. The defendant ultimately conceded that she had no such documentation. The defendants argue — again,

---

Fifteen.

[7]To the extent the objection was not properly preserved, review is for plain error, which requires: (1) an error; (2) that is plain or obvious; (3) that affects the defendant's substantial rights; and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings. *United States v. Perez-Lopez*, 2008 WL 185507 at *5 (11th Cir. 2008). An error is plain only if is "clear under current law," which requires (absent a pellucid statute or rule, which the Confrontation Clause is not) "precedent from the Supreme Court or this Court directly resolving [the issue]." *Chau*, 426 F.3d at 1322 (internal quotes omitted). The discussion in text demonstrates that this degree of clarity is absent. "A substantial right is affected if the appealing party can show that there is a reasonable probability that there would have been a different result had there been no error." *United States v. Bennett*, 472 F.3d 825, 831-332 (11th Cir. 2006). As discussed above, there is no such reasonable probability.

only by expressing the raw conclusion — that the prosecutor's questioning shifted the burden of proof to the defendant. (Doc. 79 at 19-20).

Much of the Eleventh Circuit jurisprudence on burden shifting by prosecutorial questions or comments involves attempts to emphasize the defendant's failure to testify. Here, the defendants did take the stand, so the challenged questioning "could not be characterized as an indirect reference to [their] failure to testify." *United States v. Diaz*, 190 F.3d 1247, 1255 (11th Cir. 1999).

The prosecution produced evidence from the casinos and the IRS that Pamela Hyatt had gambling winnings of almost $300,000 in the seven-year period 1999-2005, with yearly amounts ranging from $10,880 to $98,100, yet in none of her bankruptcy filings did the defendant identify any gambling income. The defendant, relying on only her ipse dixit, testified that her gambling losses each of these years exceeded her winnings, so that she had no net gambling income in any given year. The government was not required to accept the defendant's testimony at face value but was entitled to inquire whether any documents corroborated her story. This did not shift the burden of proof to the defendant but simply informed the jury that the defense rested on her testimony alone, and it prevented the defendant from later suggesting that documentary support of her position existed. *See, e.g., United States v. Sosa*, 208 Fed. Appx. 752, 756-57 (11th Cir. 2006) (pointing out the defendant's failure to produce evidence to corroborate his story, without suggesting that he was required to do so, did not shift the burden of proof); *United States v. Hernandez*, 145 F.3d 1433, 1439 (11th Cir. 1998) (it is permissible for the prosecutor to comment on the defense's failure to produce evidence to rebut the reasonable inferences of the evidence); *United States v. Johnson*, 713 F.2d 633, 651 (11th Cir. 1983) (same, specifically with respect to failure to produce documentary evidence).

Even could the prosecutor's questioning have suggested a shifting of the burden of proof, reminders from the prosecutor and/or the Court blunt any possible prejudicial

-14-

impact.  *E.g., United States v. Simon*, 964 F.2d 1082, 1087 (11th Cir. 1992); *Johnson*, 713 F.2d at 651.  Here, the Court gave no curative instruction at the time of the questioning, because none was requested, but the Court did instruct the jury repeatedly that the government bore the burden of proof, specifically stating that the defendants "have no burden to prove anything."  In light of the Court's charge, no improper burden shifting, had it occurred, could have prejudiced the defendants.  *E.g., Sosa*, 208 Fed. Appx. at 757 (jury instructions cured any prejudice); *United States v. Thomas*, 172 Fed. Appx. 970, 975 (11th Cir. 2006) (same).

In sum, there was no error, no harm from any error, and no grounds for new trial.

### D.  Prosecutorial Conflict of Interest.

In response to the questioning discussed in Part III.C, counsel on re-direct introduced a document from the Grand Casino with a list of the defendant's winnings and losses there over a course of several years.[8]  The document had been retrieved by defense counsel, during a break, from the United States Attorney's office, where it had lain among fourteen boxes of materials.  The document contained a cover letter to the IRS signed in 2002 by AUSA Bedwell, who was assigned to the criminal division.[9]

The IRS, as a creditor of the Hyatts, was represented in the 2001 and 2003 bankruptcies by AUSA Baer, who was assigned to the civil division.  An attorney from the Department of Justice was substituted for Baer in March 2005.  (Doc. 44, Exhibit A).  Baer signed the original indictment in November 2006 and the superseding indictment in July 2007, and he helped prosecute this matter at trial.

The defendants argue that Baer's role in the prosecution after his role in the early

---

[8] The document reflected net winnings of approximately $25,000 over the period covered by the document.  No document purported to reflect losses at any other casino.

[9] Contrary to the defendants' assertion, (Doc. 79 at 20), Bedwell did not sign either the original or the superseding indictment.  (Docs. 1, 5).

bankruptcies "creates the appearance of an actual conflict of interest" and requires a new trial. (Doc. 79 at 20). They also argue that Bedwell's letter is "proof positive that the civil and criminal cases overlapped." (*Id*.).

Allegations of prosecutorial misconduct are generally waived if not brought to the Court's attention at the first opportunity outside the presence of the jury, failing which the defendant is reduced to a claim of plain error. *United States v. Scheer*, 168 F.3d 445, 451 (11th Cir. 1999) (citing *Watkins v. Bowden*, 105 F.3d 1344, 1352 n.16 (11th Cir. 1997)). Here, the defendants have at all relevant times been aware of Baer's representation of the IRS in the early bankruptcy cases and of the United States in this prosecution, as he was counsel of record. They were also aware of Bedwell's letter, since it was defense counsel that brought the document to the Court's attention during a break in Pamela Hyatt's cross-examination. The defendants, however, never claimed misconduct with respect to Bedwell and conceded that their pretrial motion with respect to Baer was filed, in good faith, on the basis of information that proved to be inaccurate. (Docs. 40, 43, 45). They did not return to their argument concerning Baer until after the government rested.

The defendant is thus reduced to arguing plain error. At least the second and third elements for relief under that standard, *see* note 7, *supra*, are plainly absent here.

There is in any event no showing of misconduct. That Bedwell transmitted a document to the IRS does not reflect an ongoing criminal investigation in 2002; it shows only that she was the individual tasked to send a letter. And the defendants offer no authority for the proposition that it is improper for an AUSA to represent an arm of the government in a civil matter and later represent the government in a criminal prosecution stemming from conduct that occurred in the civil litigation.

In sum, there was no error, no harm from any error, and no grounds for new trial.

### E.  Restriction of Theory of Defense.

The defendants attempted to show that they had large debts to the IRS; that these

-16-

debts caused them financial problems; and that they had to file bankruptcy petitions successively and hurriedly in order to develop repayment plans for the IRS. (Doc. 79 at 21-22). They argue that Court rulings concerning such evidence violated their constitutional rights. (*Id*.).

At trial, counsel identified the relevance of the evidence as showing the defendants' motivation for entering bankruptcy, which was described as being to enable them to pay off the IRS debt, not to avoid creditors. Sizable evidence of this motivation was presented, and no such evidence by the defendants was excluded by the Court. The defendants presented a great deal of testimony and documents concerning the history of their problems with the IRS and how those problems prompted their multiple bankruptcy filings. On the final day of trial, the Court sustained an objection to yet two more documents offered for the same purpose. The defendants then presented additional testimony as to their unsuccessful efforts to pay off the IRS short of bankruptcy, which the Court allowed until the government finally objected on the grounds of redundancy. The defendants offered no additional evidence on these points. Counsel devoted the first several minutes of closing to rehashing the extensive evidence presented on these points.

While a court has discretion in excluding proffered evidence on the grounds of relevance, this discretion "does not ... extend to the exclusion of crucial relevant evidence necessary to establish a valid defense." *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1364 (11th Cir. 1994 ) (internal quotes omitted). As the Court noted at trial, the defendants were on trial for bankruptcy fraud, not tax fraud, yet the Court permitted the defendants to fully support their position concerning the fact, history and impact of the IRS debt. Even if the excluded evidence was relevant, it was not crucial because it was repetitive with evidence already admitted, and Rule 403 permitted the Court to exclude what it did on the grounds of waste of time and needless presentation of cumulative evidence.

In sum, there was no error, no harm from any error, and no grounds for new trial.

## CONCLUSION

For the reasons set forth above, the defendants' motion for judgment of acquittal is **denied**; the defendants' motion for dismissal is **denied**; and the defendants' motion for new trial is **denied**.

DONE and ORDERED this 3rd day of March, 2008.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE